**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00678-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph Martin and Christopher Heikkila, | |
| Defendants. | |

Defendants are charged with conspiracy to commit aggravated sexual abuse, sexual abuse, and abusive sexual contact in violation of 18 U.S.C. §§ 371, 2241(b)(1), 2242(2)(B), 2244(a)(2), and 3261(a)(1); sexual abuse in violation of 18 U.S.C. §§ 2242(2)(B), 2246(2), 3261(a)(1), and 2; and abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(2), 2246(3), 3261(a)(1), and 2. Doc. 3. The charges arise from the alleged sexual assault of a female minor on October 19, 2013, in Germany.

Defendant Martin has filed a motion to suppress electronic messages obtained by search warrants from Facebook and Twitter. Doc. 69. Defendant Heikkila has joined the motion. Doc. 88. The government has filed a response. Doc. 95. At an evidentiary hearing held on other motions on July 17, 2015, the parties agreed that the Court could rule on the motion without further briefing or argument.

**I.    Staleness of the Search Warrant Affidavits.**

Shortly after the alleged assault in October of 2013, Army criminal investigators

spoke with the victim and obtained Twitter information from her telephone.  Defendants were interviewed by investigators on November 6, 2013, and admitted their involvement in the events of October 19th, including their sexual conduct with the victim.  Defendant Martin was interviewed again briefly on November 8, 2015, and Defendant Heikkila on November 17, 2013.

On November 25, 2013, investigators submitted a preservation request pursuant to 18 U.S.C. § 2703(f) to Facebook for Martin's account.  Facebook confirmed that it would preserve communications in the account for 90 days.  Doc. 95-1.  On December 4, 2013, investigators submitted a preservation request to Twitter for Martin's and Heikkila's accounts.  Twitter confirmed that it would preserve the account data for 90 days.  Doc. 95-3.  On February 6, 2014, within the 90-day preservation period, Magistrate Judge Alan Kay of the United States District Court for the District of Columbia issued search warrants for the contents of Martin's Facebook account and both Defendants' Twitter accounts.

Upon reviewing the content of Martin's Facebook account and finding many communications with Heikkila regarding the alleged assault, agents sent a preservation request to Facebook for Heikkila's account on March 4, 2014.   Facebook confirmed that it would preserve data in the account for 90 days.  Doc. 95-7 at 46.  On May 6, 2014, within the 90-day preservation period, Magistrate Judge Michelle Burns of this Court issued a search warrant for the contents of Heikkila's Facebook account.

Defendants argue that the information contained in the search warrant affidavits was stale by the time warrants were sought.  They note that the assault is alleged to have occurred on October 19, 2013, and yet warrants were not sought until February 6 and May 6, 2014.  Defendants' motion essentially argues that the magistrate judges could not reasonably have found probable cause to believe that relevant evidence would remain in the accounts so long after the event at issue.

**A.   Legal Standards.**

To be valid under the Fourth Amendment, search warrants must be supported by

1  probable cause. In assessing the existence of probable cause, "[t]he task of the issuing
2  magistrate is simply to make a practical, common-sense decision whether, given all the
3  circumstances set forth in the affidavit . . . there is a fair probability that contraband or
4  evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213,
5  238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a
6  'substantial basis for concluding' that probable cause existed." *Id*. at 238-39 (quoting
7  *Jones v. United States*, 362 U.S. 257, 271 (1960) (ellipses and brackets omitted)). The
8  Court must remember that a "fair probability" does not amount to "certainty or even a
9  preponderance of the evidence," and the Court must not "flyspeck" the warrant affidavit
10 through de novo review. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)
11 (en banc). The magistrate judge's determination "should be paid great deference[.]"
12 *Gates*, 462 U.S. at 236.

**B.  Analysis.**

The affidavits provided in support of the search warrants supplied an ample basis for the magistrate judges to believe that Defendants had committed the alleged sexual assault. Defendants do not argue otherwise. The affidavits also described in detail some of the Facebook and Twitter communications from Defendants concerning the assault. Defendants do not dispute this fact either. The only question is whether there was probable cause to believe on February 6 and May 6, 2014, that relevant communications would still be found in the Facebook and Twitter accounts. That question is easily answered.

Expert opinion may be presented in search warrant affidavits and may provide valuable context for conducting the "fair probability" inquiry. *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990) ("It is well established that expert opinion may be presented in a search warrant affidavit."). The affidavits in this case each stated that the signing agents had received training in computer crime investigations, and each affidavit explained how Facebook and Twitter accounts work. Docs. 95-4 at 4-5; 95-5 at 4-5; 95-7 at 17-18. The affidavits explained that electronic communications on Facebook and

Twitter are stored on servers and can remain there indefinitely.  Docs. 95-4 at 22-24; 95-5 at 22-24; 95-7 at 46-49.  Each affidavit also noted that the government had served preservation requests on Facebook and Twitter and had received confirmations that the accounts would be preserved for 90 days.  Docs. 95-4 at 22; 95-5 at 22; 95-7 at 46.

Given this information, the magistrate judges clearly had a substantial basis for concluding that evidence sought in the search warrants was likely still located on the Facebook and Twitter computers.  The government served preservation requests for Martin's Facebook account and both Defendants' Twitter accounts within weeks of the alleged assault, and served search warrants within the ensuing 90-day preservation periods.  Although the preservation request for Heikkila's Facebook account was not sent until March 4, 2014, some four and one-half months after the alleged assault, his communications with Martin concerning the assault were not known until the Facebook account for Martin (the principal actor identified by the victim) was obtained.  The government served the preservation request for Heikkila's Facebook account within a few weeks of receiving the Martin Facebook information, and served the search warrant within the ensuing 90-day preservation period.  Given the affidavit's explanation that information could remain in Heikkila's Facebook accounts indefinitely, and the fact that it was being preserved by Facebook as of March 4, 2014, Judge Burns plainly had a reasonable basis for concluding in early May that the information likely would be obtained by the search warrant.

Defendants have not shown that the search warrants affidavits were stale.  Given the deference that must be accorded the magistrate judges, and the valid basis for their probable cause determinations, the Court will deny Defendants' request to suppress the Facebook and Twitter evidence on staleness grounds.

**II.     Jurisdiction for the Search Warrant.**

The search warrants in this case were issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq*.  Docs. 95-4 at 3; 95-5 at 3; 95-6 at 3.  Each sought electronic communications held on servers maintained by Facebook

- 4 -

and Twitter without identifying the geographic locations of the servers. Defendants assert the servers were located outside of the United States because Defendants used their Facebook and Twitter accounts in Germany, and thus the warrants constituted an illegal extraterritorial seizure. They further suggest that the electronic communications were not obtainable under the SCA because it applies only to internet service providers ("ISPs"), not social media sites like Facebook and Twitter that store information in the "cloud."

### A.  Legal Standard.

The SCA "covers access to electronic information stored in third party computers." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014). Under certain circumstances, governmental entities may compel others to disclose the contents of electronic communications. *See* 18 U.S.C. § 2703. The SCA sets forth different procedures for obtaining a warrant, which depend on the type of service holding the communications and how long they have been in storage. *See United States v. Warshak*, 631 F.3d 266, 283 (6th Cir. 2010).

### B.  Analysis.

The warrants issued in this case were not improper exercises of extraterritorial jurisdiction. In *In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 15 F. Supp. 3d 466 (S.D.N.Y. 2014), a case involving essentially the same issue, the court held that a warrant issued under the SCA for disclosure of email content held by Microsoft, a United States corporation, did not violate the presumption against extraterritorial application of United States law. *Id.* at 477. Given the statutory framework of the SCA and the long-held principle that location of the information sought under a subpoena is irrelevant, the court noted that "the SCA does not implicate principles of extraterritoriality." *Id.* at 472. The concerns underlying the presumption against extraterritoriality are not present because "an SCA Warrant does not criminalize conduct taking place in a foreign country; it does not involve the deployment of American law enforcement personnel abroad; [and] it does not require even the physical presence of service provider employees at the location where data are stored."

*Id.* at 475. In reviewing the legislative history of the SCA, *Microsoft* noted that Congress "appears to have anticipated that an ISP located in the United States would be obligated to respond to a warrant issued pursuant to [the SCA] by producing information within its control, regardless of where that information was stored." *Id.* at 474.

The SCA warrants in this case sought information plainly under the control of two United States corporations. Defendants do not dispute that federal courts in Arizona and the District of Columbia had jurisdiction to issue warrants to U.S. corporations Facebook and Twitter. Nor do they dispute the procedures used to obtain the warrants. As the court in *Microsoft* noted, it is well-established that so long as a court has jurisdiction over a custodian, records within the custodian's control are subject to disclosure regardless of their location. *See, e.g., Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983) ("The test for production of documents is control, not location."). Because the warrants sought information within the control of United States corporations, no concerns about the extraterritorial application of American law are implicated here.[1]

What is more, Defendants provide no evidence that the information sought was actually located on foreign servers. They point to an article noting that the number of Facebook servers around the world has grown to more than 180,000. Doc. 69 at 5 n.1. But Defendants' speculation that the electronic communications must have been stored somewhere abroad does not amount to evidence of that fact. And Defendants point to no case holding that the government must identify the exact location of electronic communications stored on remote servers in order for a SCA warrant to be valid.

Lastly, the Court is not persuaded by Defendants' argument that electronic information stored by Facebook and Twitter are not covered by the SCA. The SCA applies to "electronic computing services" ("ECS") and "remote computing services" ("RCS"). 18 U.S.C. § 2703. ECS is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* § 2510(15).

---

[1] Defendants assert that the Ninth Circuit has not addressed this issue and that the Court should not follow *Microsoft*. But Defendants fail to distinguish *Microsoft* and cite no contrary authority.

- 6 -

1  RSC is defined as "the provision to the public of computer storage or processing services
2  by means of an electronic communications system." *Id.* § 2711(2). Defendants do not
3  dispute that Facebook and Twitter provide their users with the ability to send and receive
4  electronic communications. Indeed, courts have held that Facebook and Twitter are
5  subject to the SCA. *See Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d
6  659, 667 (D.N.J. 2013) (noting that "Facebook wall posts are electronic communications"
7  and "Facebook wall posts are in electronic storage" as defined by the SCA); *In re §*
8  *2703(d)*, 787 F. Supp. 2d 430, 441 (E.D. Va. 2011) (denying motion to vacate order
9  requiring Twitter to disclose information under the SCA and finding that such an order
10 was "not an extraterritorial application of American law").

11 **IT IS ORDERED** that Defendants' motion to suppress information obtained from
12 Facebook and Twitter (Doc. 69) is **denied**.

13 Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from
14 April 21, 2015.

15 Dated this 21st day of July, 2015.

David G. Campbell
United States District Judge