**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00678-01-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph S. Martin, | |
| Defendant. | |

In September 2015, Defendant Joseph Martin was convicted of sexual abuse and abusive sexual contact. Doc. 299. Martin has completed his prison term, is now serving a term of supervised release, and has filed an amended motion to vacate his convictions for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 60(b)(4). Doc. 398. The motion is fully briefed (Docs. 398-402), including supplemental briefing (Docs. 404, 407), and no party requests oral argument. The Court will deny the motion.[1]

**I.   Background.**

In October 2013, Martin sexually assaulted a female minor on a residential street outside of a private residence in Germany. *See* Doc. 399 at 2-3.[2] In May 2014, a federal

---

[1] The government filed a supplemental brief, to which Martin responded. *See* Docs. 404, 407. The government then moved to strike Martin's response for purportedly addressing issues outside the scope of the original briefing. Doc. 408. Martin opposed the motion to strike. Doc. 409. Because Martin's response is immaterial to the Court's decision, the Court will deny the motion to strike as moot. *See, e.g.*, *Klungvedt v. Unum Grp.*, No. 2:12-CV-00651 JWS, 2012 WL 2368623, at *2 (D. Ariz. June 21, 2012).

[2] Citations are to page numbers placed at the top of pages by the court filing system.

grand jury indicted him for conspiracy to commit aggravated sexual abuse, sexual abuse, and abusive sexual contact in violation of federal law.  Doc. 3.  The indictment cited the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. §§ 3261 *et seq.*, which authorizes federal court jurisdiction over criminal acts of military personnel and their dependents overseas.  *Id.*  After a six-day jury trial, Martin was acquitted of conspiracy and convicted on the sexual abuse and abusive sexual conduct charges.[3]  Doc. 245.  The Court sentenced Martin to 96 months in prison, followed by five years of supervised release.  Doc. 299.[4]

In February 2021, Martin filed a motion to vacate or set aside the judgment pursuant to 28 U.S.C. § 2255.  Doc. 1, Case No. 21-cv- 213-DGC-JZB.  He has moved to stay the § 2255 motion pending the Court's decision in this matter.  Doc. 7, Case No. 21-cv- 213-DGC-JZB.

**II.   Relevant Law.**

    **A.   MEJA.**

Congress enacted MEJA to address "a jurisdictional gap created by host nations' reluctance to prosecute crimes against Americans committed by civilians accompanying the Armed Forces outside the United States."  *United States v. Arnt*, 474 F.3d 1159, 1161 (9th Cir. 2007).  MEJA applies when a person connected with the Armed Forces engages in conduct abroad that would constitute an offense punishable by imprisonment for more than 1 year if committed in the United States.  *See* 18 U.S.C. § 3261(a)(1)-(2).  The statute requires that the culpable party engage in the conduct: (1) while employed by or accompanying the Armed Forces outside the United States, or (2) while a member of the Armed Forces.  *See id.*  MEJA defines the phrase "accompanying the Armed Forces outside the United States" as, among other things, a dependent of a member of the Armed Forces

---

[3] Martin was tried alongside his co-defendant, Christopher Heikkila, who received the same verdict on the same charges.  *See* Doc. 245.

[4] Martin timely appealed, and the Ninth Circuit affirmed the judgment on April 9, 2018.  Doc. 380-1.  On August 23, 2018, Martin filed a motion to correct the judgment (Doc. 382), which the Court denied on October 12, 2018 (Doc. 384).

who resides with the Armed Forces member outside the United States and is "not a national of or ordinarily resident in the host nation." *Id.* § 3267(2)(A)-(C).

### B. Rule 60(b)(4) and Subject Matter Jurisdiction.

A party may challenge a judgment at the district court level under Rule 60(b)(4). The rule provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the [reason that] the judgment is void." *Id*. The list of void judgments under the rule is "exceedingly short," and "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Dietz v. Bouldin*, 794 F.3d 1093, 1096 (9th Cir. 2015) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)). Although it is a rule of civil procedure, it applies to habeas cases arising from a criminal conviction where parties seek "to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction[.]" *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). A district court also may address subject-matter jurisdiction "on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). If the court lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

### III. Discussion.

Martin makes two arguments in support of his claim that the Court lacked subject-matter jurisdiction in this case.[5]

---

[5] Martin briefly suggests in his reply that the Court also lacked personal jurisdiction. *See* Doc. 402 at 5. Because Martin never fully develops this argument and raises it for the first time in his reply, the Court will not consider it. *See United States v. Bunnell*, No. CR-14-00119-PHX-DGC, 2021 WL 212338, at *2 (D. Ariz. Jan. 21, 2021). The argument also fails on its merits. A final judgment may be collaterally attacked for lack of personal jurisdiction under Rule 60(b)(4), *see Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980), but only where a defendant has not waived the argument or voluntarily submitted to the Court's jurisdiction, *Ferdman v. Consulate Gen. of Israel*, No. 98 C 1555, 1999 WL 92917, at *2 (N.D. Ill. Feb. 17, 1999). Martin submitted himself to the Court's jurisdiction when he made an initial appearance in May 2014. *See* Doc. 11; *United States v. Warren*, 610 F.2d 680, 684 n.8 (9th Cir. 1980) ("In this circuit . . . a court has exclusive personal jurisdiction over any party who appears before it, regardless of how that appearance was effected.") (citations omitted).

First, Martin argues that his indictment was defective because the government charged him only with violations of the federal sexual assault statutes, not with a MEJA violation as a separate offense. *See* Docs. 3, 398 at 13-16. Because the incident occurred in Germany and the charged offenses apply only within the special and maritime jurisdiction of the United States, Martin contends that the Court lacked the power to hear his case. *See* 18 U.S.C. §§ 2241, 2242, 2244 (providing that the offenses must have occurred within the "special maritime and territorial jurisdiction of the United States[.]"); *see also Bond v. United States*, 572 U.S. 844, 857 (2014) ("[W]e presume, absent a clear statement from Congress, that federal statutes do not apply outside the United States.").

Second, if the indictment is sufficient, Martin argues that MEJA does not apply because he does not meet one of its threshold elements – he was "not a national of or ordinarily resident in the host nation" at the time of the incident. 18 U.S.C. § 3267(2)(C). Martin claims he was "ordinarily resident" in Germany because he was born and raised there and had left the country only for short trips with his family. Doc. 398 at 18. Because the government never presented sufficient evidence to prove that he was not "ordinarily resident" in Germany, Martin argues, it could not establish the "jurisdictional facts" required for subject-matter jurisdiction. *Id.* at 9.

The government replies that Martin lived in Germany solely because of his "connection to the military rather than because of other significant 'local ties.'" Doc. 399 at 21 (quoting *United States v. Williams*, 836 F.3d 1, 6 (D.C. Cir. 2016)). It also contends that his arguments, while couched as subject-matter jurisdiction challenges, actually involve the extraterritorial reach of his charged offenses, which is not a basis for voiding a judgment under Rule 60(b)(4). *See* Doc. 404 at 1-2.[6]

---

[6] The government also argues that Martin's motion to vacate is an untimely habeas petition disguised as a Rule 60(b)(4) motion. Doc. 399 at 14-15; *Gonzalez*, 545 U.S. at 531-32 (using Rule 60(b) to present new claims for relief from a judgment, even where "couched in the language of a true Rule 60(b) motion," would "circumvent [the Antiterrorism and Effective Death Penalty Act of 1996] requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts."). The Court will not address this argument because Martin's arguments clearly fail on the merits.

- 4 -

### A. Sufficiency of the Indictment.

Martin argues that his indictment was "defective" because it did not charge violations of MEJA. This argument is based on the incorrect premise that defective indictments deprive a federal court of subject matter jurisdiction. As the Supreme Court has explained, "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Arnt*, 474 F.3d at 1162 (indictment failing to assert residence did not strip the district court of jurisdiction to hear the case). Because a defective indictment does not constitute a "jurisdictional error," it provides no basis to void Martin's judgment under Rule 60(b)(4). *Dietz*, 794 F.3d at 1096.

Martin's argument also fails on the merits. He argues that the government was required to charge him with a violation of MEJA, not with the federal sex offenses of which he was convicted. Doc. 398 at 14-15. He relies on a House Report for MEJA which stated that a qualifying defendant alleged to have violated 18 U.S.C. § 2242 should be charged with "a violation of section 3261, not section 2242," and that "a violation of section 2242 need not be charged." H.R. Rep. No. 106-778, at 15 (2000); *see also* Department of Defense Instruction 5525.11 ¶ 6.1.1 (crimes prosecuted under MEJA are "charged as a violation of Section 3261(a) of the Act.").

The Court is not persuaded that language in a House Report delineates the extent and nature of a MEJA violation. As the Ninth Circuit has explained, "legislative history – no matter how clear – can't override statutory text." *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011) (internal citations and quotation marks omitted). And MEJA's text clearly suggests that it establishes a method for prosecuting certain persons for existing federal offenses that are committed outside the United States:

> Whoever engages in conduct outside the United States that would constitute <u>*an offense*</u> *punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States* —
>
> (1) while employed by or accompanying the Armed Forces outside the United States; or

>(2) while a member of the Armed Forces subject to chapter 47 of title 10 (the Uniform Code of Military Justice),
>
>shall be punished as provided for *that offense*.

18 U.S.C. § 3261(a) (italics and underscoring added). The statute thus applies to conduct that constitutes a federal offense – "an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States" – and applies the punishment for "that offense." *Id.* It does not purport to create a new crime, and it does not set forth the elements of a new offense. Similarly, the title of the statute – the Military *Extraterritorial Jurisdiction* Act – expressly focuses on extending the jurisdiction of federal courts rather than creating new crimes. The language of the statute and its title take precedence over the House Report, and simply cannot be squared with Martin's argument that the government was required to charge MEJA as the offense committed by Martin. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.").

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and "is sufficient if it contains 'the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy.'" *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995)). Martin never claims that the indictment lacked essential facts or elements of the charged federal sex offenses. The indictment also alleged the key elements of MEJA, including that Martin was not a national of, or ordinarily resident in, Germany (Doc. 3 at 2, ¶ 4(e)); incorporated factual MEJA allegations at the beginning of each count (*id.* at 2-7); and cited 18 U.S.C. § 3261 in the caption and at the end of each count. *Id*.

The Court had subject-matter jurisdiction under 18 U.S.C. § 3231, which provides that the "district courts of the United States shall have original jurisdiction, exclusive of

the courts of the States, of *all offenses against the laws of the United States.*" 18 U.S.C. § 3231 (emphasis added). Martin's indictment charged him with "offenses against the laws of the United States" – the federal sex offenses – and MEJA extended the reach of those offenses to Martin's conduct in Germany. This is enough for subject-matter jurisdiction. *See United States v. Yousef*, 750 F.3d 254, 262 (2d Cir. 2014) ("In the criminal context, 18 U.S.C. § 3231 is all that is necessary to establish a court's power to hear a case involving a federal offense . . ."), *abrogated on other grounds by Class v. United States*, 138 S. Ct. 798 (2018); *United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2016) ("The question whether the federal courts have subject-matter jurisdiction over a prosecution of a criminal offense defined by the statutes of the United States is simply and conclusively answered by 18 U.S.C. § 3231."); *United States v. Kaluza*, 780 F.3d 647, 654 (5th Cir. 2015) ("In the criminal context, subject-matter jurisdiction is straightforward. Here, the district court had subject-matter jurisdiction under 18 U.S.C. § 3231[.]").

### B.     Applicability of MEJA to Martin's Case.

Martin argues that he fell within MEJA's exception for those "ordinarily resident in the host nation" because he was born in Germany and, except for brief visits abroad with his family, spent his entire life there. Doc. 398 at 7; 18 U.S.C. § 3267(2); *see also* DOD Instruction 5525.11 ¶ 6.1.7.1 (providing that those resident in the host nation where the offense occurred are not subject to prosecution under MEJA, regardless of their employment or dependent status). Martin contends that the government failed to produce sufficient evidence about his residency at trial and never properly explained the term "ordinarily resident" to the jury. Doc. 398 at 9-10. The Court does not agree.

The government presented ample evidence that Martin was in Germany solely because of his parents' ties to the United States military. This included Martin's U.S. passport, Arizona driver's license, employment forms reflecting his parents' active-duty military status, Department of Defense identification card, attestations of his U.S. citizenship and lack of German citizenship or other resident status, and civilian employment stubs at the Army and Air Force Base Exchange Service at Ramstein, which

hosts the largest American military community outside of the United States.  Doc. 399 at 3, 22-23.  As the government notes, this evidence "showed that Martin's entire existence in Germany revolved around his parents' presence in the country" and was sufficient for a rational jury to find that Martin was not "ordinarily resident" in Germany when the crime occurred.  *See Williams*, 839 F.3d at 389 (concluding that a rational jury could have readily inferred from evidence presented at trial that the defendant was only in Germany because of his wife's connection with the military, and thus was not "ordinarily resident" in the host nation at the time of the crime).

Martin also claims that the jury instructions were defective because not every instruction required a finding that he was not "ordinarily resident" in Germany.  Doc. 398 at 10-11.  This is not correct.  The jury instructions for sexual abuse and abusive sexual contact – the counts for which Martin was convicted – each stated that the government must prove beyond a reasonable doubt that "the offense was committed by a person employed by or accompanying the Armed Forces outside the United States."  Doc. 254 at 19, 22.  The preceding instruction about the offenses charged in this case specifically explained that "[t]he term 'accompanying the Armed Forces outside the United States' means that defendants were (1) dependents of a civilian employee of the Department of Defense; (2) residing with such member outside the United States; and (3) not nationals of *or ordinarily resident in* Germany."  *Id.* at 17 (emphasis added).  The jury was instructed on MEJA's residency requirement.[7]

Even if Martin's arguments were meritorious, they would not provide a basis for voiding his judgment under Rule 60(b)(4).  His arguments are premised on the assumption that the government's failure to prove a required element of MEJA means that his charged

---

[7] Martin spends considerable time arguing that the government acted improperly by, among other things, deliberately downplaying his German residency, permitting witnesses to testify falsely, and engaging in "manipulative forum-shopping tactics."  *See, e.g.,* Docs. 398 at 9-11; 407 at 5.  The Court does not agree, and none of these arguments provides a basis for voiding the judgment in this case.  The alleged defects in the trial are unrelated to subject-matter jurisdiction, and Martin never argues that they constitute the unique type of due process violation that would justify relief under Rule 60(b)(4).  *Dietz*, 794 F.3d at 1096.  To the extent Martin is arguing that the jury reached the wrong conclusion, this too is not a subject-matter jurisdiction issue.

- 8 -

offenses could not have extraterritorial application and the Court lacked subject-matter jurisdiction. But the extraterritorial reach of a statute does not implicate subject-matter jurisdiction. *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 254 (2010) (circuit court erred in considering the extraterritorial application of a statute as raising the question of subject-matter jurisdiction); *see also United States v. Ghanem*, 993 F.3d 1113 n.6 (9th Cir. 2021) (noting that "extraterritoriality is not a question of subject-matter jurisdiction – so long as [the defendant] is charged with a federal crime, the district court has subject-matter jurisdiction to hear [the] case."); *Prado*, 933 F.3d at 138 ("The Supreme Court has chastised us before for treating a question of the prescriptive reach of a U.S. statute as if it placed a limit on the subject-matter jurisdiction of the federal courts."). As discussed above, the Court acquired subject-matter jurisdiction from the charges against Martin for federal sex offenses. *See* 18 U.S.C. § 3231. His arguments are more accurately characterized as "merit[s] questions" that have little to do with "a tribunal's power to hear a case." *Morrison*, 561 U.S. at 254; *Arbaugh*, 546 U.S. at 511 (noting that courts "often obscure the issue [of subject-matter jurisdiction] by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject-matter jurisdiction or for failure to state a claim.").[8]

**IT IS ORDERED:**

1. Martin's amended motion to vacate (Doc. 398) is **denied.**

2. The government's motion to strike (Doc. 408) is **denied as moot.**

Dated this 18th day of August, 2021.

David G. Campbell
Senior United States District Judge

---

[8] Martin cites *United States v. Gabrion*, 517 F.3d 839, 845 n. 5 (6th Cir. 2008), for the proposition that "whether an offense is committed within the special maritime and territorial jurisdiction of the United States is an issue of subject-matter jurisdiction." Doc. 398 at 13. *Gabrion* was decided before the Supreme Court's decision in *Morrison*.